ACCEPTED
01-15-00052-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/26/2015 3:49:49 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00052-CV

IN THE COURT OF APPEALS FOR
THE STATE OF TEXAS
AT HOUSTON (1ST DISTRICT)

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/26/2015 3:49:49 PM
CHRISTOPHER A. PRINE
Clerk

HARRIS COUNTY, TEXAS
Appellant

v.

GERALD KNAPP and
NARCISCO AURIOLES.
Appellees

On appeal from the 333rd District Court
of Harris County, Texas

APPELLEE GERALD KNAPP'S BRIEF

BY:   SCOTT C. LANNIE
LAW OFFICES OF SCOTT C. LANNIE, P.C.
4000 Garth Road, Ste. 150
Baytown, Texas 77521
State Bar No. 11937350
Tel. (281) 303-9700
Fax (281) 303-8286
Email: sclannie@aol.com
*Attorney for Appellee GERALD KNAPP*

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

PAGE NO.

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

Abbreviations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

Argument and Authorities

Reply Point No. 1:

The trial court had jurisdiction to determine the proper allocation of the
Third party settlement proceeds under Chapter 417 of the
Texas Labor Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

A.    Knapp's declaratory judgment action is not barred by sovereign
      immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

B.    Even if sovereign immunity applied, Harris County waived any
      such immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

C.    The TWCA waives sovereign immunity for apportionment of
      third party settlement proceeds. . . . . . . . . . . . . . . . . . . . . . .    26

Reply Point No. 2:

The trial court did not abuse its discretion in allocating the third party
settlement funds in accordance with Chapter 417 of the
Texas Labor Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    31

A.    The trial court correctly determined the "net amount recovered" for the
      purposes of calculating Harris County's interest. . . . . . . . . . . . .32

B.   The trial court did not abuse its discretion in allocating the fees on Harris County's interest under section 417.003 of the TWCA. . . . 38

Reply Point No. 3:

The trial court did not commit reversible error by denying Harris County's request for a jury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

A.   Under section 417.003, the trial court was required to determine the allocation of fees and expenses without a jury. . . . . . . . . . . . . . . 45

B.   Even if the trial court erred in failing to conduct a jury trial, any such error was harmless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50


Prayer for Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

# INDEX OF AUTHORITIES

CASES:                                                          PAGE

*Allison v. Service Lloyds Ins. Co.*
437 S.W.3d 589, 595 (Tex. App.-Houston [14th Dist.]
2014, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

*Bridges v. Texas A&M Univ. System,*
790 S.W.2d 831, 833 (Tex. App.—Houston [14th Dist.]
1990, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Caesar v. Bohacek,*
176 S.W.3d 282, 285 (Tex. App.-Houston [1st Dist.]
2004, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Cameron v. Terrell & Garrett, Inc.*
618 S.W.2d 535, 540 (Tex. 1981) . . . . . . . . . . . . . . . . . . . . . . . 21

*Catalina Dev., Inc. v. County of El Paso,*
121 S.W.3d 704, 705-706 (Tex. 2003) . . . . . . . . . . . . . . . . . . . . 19

*Chevron Corp. v. Redmon,*
745 S.W.2d 314, 316 (Tex. 1987) . . . . . . . . . . . . . . . . . . . . . . . 27

*City of Austin v. Janowski*
825 S.W.2d 786, 789 (Tex. App.-Austin 1992, no writ) . . . . . . . . . 33

*City of Dallas v. Jull Herz, P.C.,*
363 S.W.3d 896, 898, 900-01
(Tex. App.-Dallas 2012, no pet.) . . . . . . . . . . . . . . 15, 16, 19, 20, 24

*City of LaPorte v. Barefield,*
898 S.W. 2d 288, 296-97 (Tex. 1995) . . . . . . . . . . . . . . . . . . . .22, 23

*Cohens v. Wirginia,* 6 Wheat. 264, 293, 5 L.Ed. 257 (1821). . . . . . . 18

*Continental Coffee Products Co. V. Cazarez,*
937 S.W.2d 444, 449 (Tex. 1997) . . . . . . . . . . . . . . . . . 20

*County of Galveston v. Tolle,*
176 S.W.3d 859, 862 (Tex. App.-Houston [1st Dist.]
2005, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Dallas Ind. Sch. Dist. V. Porter,*
709 S.W.2d 642, 643 (Tex. 1986) (per curiam). . . . . . . . . . . . . . . . .20

*Delgado v. Texas Municipal League Intergovernmental Risk Pool,*
13-09-00126-CV (Tex. App—Corpus Christi,
Aug. 31, 2009, no pet.) . . . . . . . . . . . . . . . . . . . . . 28, 36, 37

*Erivas v. State Farm Mut. Auto Ins. Co.,*
141 S.W.3d 671, 676 (Tex. App.-El Paso 2004, no pet.). 24, 27, 36, 37

*Federal Sign v. Texas Southern Univ.,*
951 S.W.2d 401, 404 (Tex. 1997) . . . . . . . . . . . . . . . . . . 15

*Flynt v. Garcia,*
587 S.W. 2d 109, 109-10 (Tex. 1979) . . . . . . . . . . . . . . . . . 20

*Guar. Trust Co. v. United States,*
304 U.S. 126, 134-35, 58 S.Ct. 785,82 L.Ed. 1224 (1938) . . . . . . . . 19

*Halsell v. Dehoyos,*
810 S.W.2d 371, 372 (Tex. 1991) . . . . . . . . . . . . . . . . . . .39

*Hartford Accident & Indem. Co. v, Buckland,*
882 S.W.2d 440, 446
(Tex. App.-Dallas 1994, writ denied) . . . . . . . . . . . . . . . .24, 33, 36, 37

*Hartford Ins. Co. v. Branton & Mendelsohn, Inc.*
670 S.W.2d 699, 702 (Tex. App-San Antonio 1984, no writ) . . . . . . . 33

*Hodges v. Mack Trucks Inc.*
474 F.3d 188, 204 (5th Cir. 2006 . . . . . . . . . . . . . . . . . .32

*Houston Gen. Ins. Co. v. Campbell,*
964 S.W.2d 691 (Tex. App.—Corpus Christi 1998, no pet.). . . . . . . .26

*Insurance Co. of N. Am. v. Wright,*
886 S.W.2d 337, 334 (Tex. App.—Houston [1st Dist.],
1994, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

*Lumbermens Mutual Casualty Co. v. Parrent,*
No. 05-96-01144-CV (Tex. App.—Dallas, April 20, 1998, no pet.). . 26

*Morales v. Michelin N. America, Inc.,*
351 S.W.3d 120, 123-24
(Tex. App.-San Antonio 2011, no pet,). . . . . . . . . . . . . . . . . 34, 37

*Olson v. Texas Commerce Bank,*
715 S.W.2d 764, 767 (Tex. App.—Houston [1st Dist.]
1986, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . .39

*Prewitt & Sampson v. City of Dallas,*
713 S.W.2d 720, 723 (Tex. App.-Dallas 1986, writ ref'd n.r.e.). . 28, 29

*Reata Constr. Corp. v. City of Dallas,*
197 S.W.3d 371 (Tex. 2006) . . . . . . . . . . . . . . . . . . . 17, 18, 19, 20, 24

*Resolution Oversight Corp. v. Garza,*
No 03-08-00481-CV, 2009 Tex. App. LEXIS 5324, at 22-24
(Tex. App.—Austin July 10, 2009, no pet.) . . . . . . . . . . . . . . . . . .27

Rowan v. Zurich Am. Ins. Co.
499 F.Supp.2d 704, 707 (E.D. Tex. 2007). . . . . . . . . . . . . . . . . .30

*Russell v. Metropolitan Transit Authority,*
343 S.W.3d 825,
(Tex. App.—Houston [14th Dist.] 2011, no pet.) . . . . . . . . . . 15, 16, 24

*Texas Dept. of Transp. v. Anderson,*
No. 2-98-383-CV (Tex. App.-Fort Worth, June 22, 2000, no pet.). . .26

*Texas Dep't of Transp. v. Wilson,*
980 S.W2d 939, 942 (Tex. App.—Fort Worth 1998, no pet.). . . 21, 23

*Texas Educ. Agency v. Leeper,*
893 S.W.2d 432, 446 (Tex.1994) . . . . . . . . . . . . . . . . . . . . . . .14

*Texas Emp. Ins. Ass'n. v. Hatton*
255 S.W.2d 848,152 Tex. 199 (Tex. 1953) . . . . . . . . . . . . . . .37, 38

*Texas Employers Insurance Association v. Motley,*
491 S.W.2d 395, 394 (Tex. 1973) . . . . . . . . . . . . . . . . . . . . .37, 38

*Tex. Mut. Ins. Co. v. Ledbetter,*
251 S.W.3d 31 (Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Texas Natural Res. Cons. Comm'n v. IT-Davy,*
74 S.W.3d 849, 853 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . 13

*Tex. Workers' Comp. Ins. Fund v. Alcorta,*
989 S.W.2d 849, 852
(Tex. App.-San Antonio 1999, no pet.) . . . . . . . . . . . . . . .26, 27, 36, 37

*Transcontinental Ins. Co. v. Crump,*
330 S.W.3d 211 (Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . .37, 38

*Travis Cent. Appraisal Dist. v. Norman,*
342 S.W.3d 54 (Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Sampson v. City of Dallas,*
713 S.W.2d 723 (Tex. App—Dallas 1986, writ ref'd n.r.e) . . . . . . . . 29

*Union Carbide Corp. v. Synatzske,*
438 S.W.3d 39, 52 (Tex. 2014) . . . . . . . . . . . . . . . . . . . . . . . 23

*Univ. of Texas v. Bishop,*
997 S.W.2d 350, 354
(Tex. App.—Fort Worth 1999, pet. denied) . . . . . . . . . . . . . . . 22, 23

*Univ. of Texas Health Science Center v. Mata & Bordini, Inc.,*
2 S.W.3d 312, 318
(Tex. App.—San Antonio 1999, pet. denied) . . . . . . . . . . . . . . .22, 23

*Univ. Of Tex. Sys. v. Melchor,*
696 S.W.2d 409, 409
(Tex. App.—Houston [14th Dist.] 1985, no writ) . . . . . . . . . . . . . . . . . . . 33

Wichita Falls State Hosp. v. Taylor,
106 S.W.3d 692, 694 n. 3 (Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 18

IN THE COURT OF APPEALS FOR

THE STATE OF TEXAS

AT HOUSTON (1ST DISTRICT)

HARRIS COUNTY, TEXAS
Appellant

v.

GERALD KNAPP and
NARCISCO AURIOLES.
Appellees

On appeal from the 333rd District Court
of Harris County, Texas

APPELLEE GERALD KNAPP'S BRIEF

## STATEMENT OF THE CASE

This case involves the allocation of settlement proceeds recovered by

Appellee GERALD KNAPP in a third-party liability claim arising from injuries

received while working for Appellant HARRIS COUNTY, TEXAS. CR 5-9. On

February 1, 2013, the trial court rendered a partial summary judgment establishing the "net amount of recovery" from which the subrogation interest of Harris County could be satisfied. CR 222-223. After a non-jury trial, the court rendered final judgment establishing the proper allocation of the settlement proceeds in accordance with the Texas Workers' Compensation Act. CR 295-96.

## ABBREVIATIONS

The following abbreviations are used in this brief:

(a)  "CR" refers to the clerk's record on appeal.

(b)  "RR" refers to the court reporter's record.

## SUMMARY OF THE ARGUMENT

Over the course of several years, Harris County has engaged in numerous tactics in its efforts to seize a portion of its employee's third party settlement proceeds for which the County has no legal right of recovery. One such effort has been Harris County's assertion that Knapp's declaratory judgment action is allegedly barred by sovereign immunity. However, the trial court correctly overruled Harris County's arguments in this regard. As demonstrated at length below, sovereign immunity does not apply to Knapp's declaratory judgment action. Moreover, Harris County waived any alleged immunity by asserting its own claim for affirmative relief in this cause, including

10

a claim against Knapp for attorneys' fees. The trial court also correctly allocated the third party settlement proceeds in accordance with chapter 417 of the Texas Workers' Compensation Act, as Harris County's attorney did nothing to assist in obtaining the third party settlement. Finally, the trial court did not commit any reversible error in determining the proper allocation of the settlement proceeds without a jury. Not only did chapter 417 require the trial court's determination of those issues, but Harris County did not offer any evidence at trial to contest the allocation issues. For this reason, any alleged error of the trial court in not having a jury is merely harmless.

## STATEMENT OF THE FACTS

(1) On June 23, 2010, Appellee GERALD KNAPP (hereinafter "Knapp") was operating a mower in Harris County, Texas, when his equipment was struck by a motor vehicle operated by a third party, Appellee NARCISO AURIOLES (hereinafter "Aurioles" or "the third party"). CR 100-101. Aurioles was cited for failure to maintain a single lane of traffic as a result of the collision. CR 101.

(2) At the time of the incident, Knapp was serving in the course and scope of his employment with Appellant HARRIS COUNTY, TEXAS (hereinafter "Harris County"), and thus received workers' compensation benefits from the county. CR 107-112. Documentation produced on behalf of Harris County reflected that $19,158.37 in medical and indemnity benefits were paid in Knapp's worker's compensation claim, and that an additional $347.87 were paid in unspecified fees to an entity as Argus Services Corporation. CR 121-23.

(3) On July 1, 2010, Knapp executed a contingency fee contract with the Law Offices of Scott C. Lannie, P.C. regarding his claims arising from the collision occurring on June 23, 2010. CR 124-127. Under the terms of that contract, the attorney's fees for Knapp are calculated at thirty-six percent

12

(36%) of any settlement or recovery obtained after the filing of a lawsuit, but before commencement of trial. CR 124. Additionally, all costs and expenses are deducted after the contingency fee percentages are applied to any total recovery or settlement. CR 124.

(4) At the time of the collision, Aurioles maintained automobile bodily injury liability coverage limits of $25,000.00 per person. CR 128. However, the liability insurance carrier for Aurioles initially extended an offer to settle the liability claims arising from the collision in question for the amount of $10,090.00, inclusive of all liens and expenses. CR 129. This offer was far less than the subrogation interest being claimed by Harris County, whose worker's compensation claims administrator nevertheless demanded "full reimbursement for all monies expended." CR 130. In light of the position taken by the administrator, counsel for Knapp requested Harris County to acknowledge the provisions of section 417.002 of Texas Labor Code, under which the net amount recovered by a claimant in a third-party action is used to reimburse the insurance carrier. CR 131-32. Additionally, pursuant to chapter 417 of the Texas Labor Code, counsel for Knapp requested whether Harris County would agree to an offset of one-third (1/3) of its subrogation interest, and if not, the legal and factual basis for its refusal in that regard. CR 135-36. Harris County responded by promptly filing a lawsuit against Aurioles

13

in the county court. CR 137. Because of the jurisdictional limits of county court, Knapp filed suit against Aurioles in district court, and also asserted a declaratory judgment action against Harris County seeking a declaratory judgment as to the proper allocation of any proceeds to be recovered from Aurioles. CR 5-9. Harris County eventually dismissed its lawsuit in county court, and amended its pleadings in the present cause as to assert its own claim for declaratory judgment relief. CR 29-33. Harris County also sued for the recovery of its attorneys fees and costs. CR 29-33.

(5) After continuing negotiations, Knapp was eventually able to settle his liability claim asserted against Aurioles for the amount of $23,250.00. CR 141. Knapp thereafter filed a Motion for Partial Summary Judgment seeking a determination of the "net amount of recovery" from which Harris County's interest could be satisfied from the third party settlement proceeds. CR 77-145. Harris County also filed its own summary judgment motion, as well as a Plea to the Jurisdiction alleging that Knapp's declaratory judgment action was barred by sovereign immunity. CR 43, 51-64. In its order dated February 1, 2013, the trial court granted Knapp's Motion for Partial Summary Judgment, establishing that $14,427.00 constituted the "net amount of recovery" from which any subrogation interest asserted by Harris County could be satisfied. CR 222-223. The court also denied Harris County's summary judgment

14

motion and Plea to the Jurisdiction. CR 222-223.

(6) The remaining issue concerned the allocation of attorneys' fees and expenses on Harris County's interest under section 417.003 of the Texas Labor Code. During the course of discovery, Harris County admitted that it did not participate in the settlement negotiations of the third party liability claim; never attempted to establish the admissibility of Knapp's health care records or medical bills; never attempted to establish the reasonableness and necessity of Knapp's medical expenses by affidavit under Tex. Civ. Prac. & Rem. Code §18.001; and never forwarded a "Stowers" letter to Aurioles' insurance carrier. CR 107-112. On December 8, 2014, the trial court conducted a non-jury trial on the remaining issues to determine the proper allocation of third party settlement proceeds. RR 5-44. At trial, Harris County did not bring any witnesses, and only offered evidence establishing the amounts paid in connection with Knapp's workers' compensation claim. RR 28-31. Additionally, Harris County did not contest the testimony from Knapp's attorney regarding the services provided by him in obtaining the third party settlement. RR 26-28. The trial court rendered a final judgment declaring that Harris County is entitled to recover $9,337.14, and that Plaintiff and his counsel are entitled to recover $13,912.86, from the settlement proceeds of $23,250.00. CR 295-96.

## ARGUMENT AND AUTHORITIES

**REPLY POINT NO. 1**: <u>The trial court had jurisdiction to determine the proper allocation of the third party settlement proceeds under Chapter 417 of the Texas Labor Code</u>.

Since the inception of this case, Harris County has consistently attempted to mischaracterize the actual nature of Plaintiff's claims in its attempt to invoke sovereign immunity. Specifically, Harris County alleges that Knapp is asserting "a suit for money damages," which could otherwise be barred by sovereign immunity. In reality, Knapp is seeking a declaratory judgment to determine the proper allocation of settlement proceeds to be paid by a third party. As demonstrated at length below, Knapp's declaratory judgment action is not a "suit for money damages" against Harris County, and is thus not subject to sovereign immunity. Nevertheless, even if sovereign immunity was applicable, Harris County waived any such immunity by asserting its own claims for affirmative relief, and by suing its employee Knapp for attorneys' fees. Despite all of the various arguments offered by Harris County regarding sovereign immunity, its brief is conspicuously silent about its own waiver of immunity, which represents a second, independent basis justifying the trial court's denial of the county's Plea to the Jurisdiction.

16

**A. Knapp's declaratory judgment action is not barred by sovereign immunity:**

As a general rule, sovereign immunity protects governmental entities from lawsuits seeking money damages. <u>Texas Natural Res. Cons. Comm'n v. IT-Davy</u>, 74 S.W.3d 849, 853 (Tex. 2002). However, Knapp's claims as to Harris County were strictly limited to declaratory relief asserted under the Uniform Declaratory Judgments Act ("UDJA"), Tex. Civ. Prac. & Rem. Code § 37.001 et seq. CR 180-84. The stated purpose of the UDJA "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." <u>Id</u>. at §37.002. Under the UDJA, a person whose rights or legal relations are affected by a statute may seek a determination of any questions arising under the statute, and obtain a declaration of their rights or legal relations thereunder. <u>Id</u>. at §37.003. A plain reading of the statute demonstrates that governmental entities are not immune to proceedings asserted under the UDJA. For example, section 37.006 specifically requires that a municipality must be made a party to any proceeding under the UDJA involving the validity of a municipal ordinance. <u>Id</u>. at §37.006. In a similar vein, the Attorney General must be served with a copy of any declaratory judgment action in

17

which a statute or ordinance is alleged to be unconstitutional. Id.

Despite the foregoing, Harris County proclaims that the "Declaratory Judgments Act does not waive Governmental Immunity." See Appellant's Brief, p. 40, subpart (D). Such a statement is patently false, as demonstrated by the Texas Supreme Court in Texas Educ. Agency v. Leeper, 893 S.W.2d 432, 446 (Tex.1994). In Leeper, the plaintiffs sued the Texas Education Agency and various school districts under the UDJA, seeking a determination of their rights under compulsory attendance provisions of the Texas Education Code. Id. at 433. As the non-prevailing parties in the declaratory judgment action, the school districts were held liable for the plaintiffs' attorney fees under section 37.009 of the UDJA. Id. at 433. On appeal, the school districts claimed that sovereign immunity barred any recovery of attorneys' fees under the UDJA. Id. at 444. The Texas Supreme Court disagreed: "[B]y authorizing declaratory judgment actions to construe the legislative enactments of governmental entities and authorizing awards of attorney fees, the DJA necessarily waives governmental immunity for such awards." Id. at 446. Moreover, when private parties utilize the UDJA to determine their rights under a statute, such suits do not attempt to impose any monetary liability upon the State, and thus sovereign immunity is not even implicated. County of Galveston v. Tolle, 176 S.W.3d 859, 862 (Tex. App.-Houston [1st Dist.] 2005,

18

pet. denied); see also Federal Sign v. Texas Southern Univ., 951 S.W.2d 401, 404 (Tex. 1997) ("...we distinguish suits to determine a party's rights against the State from suits seeking damages. A party can maintain a suit to determine its rights without legislative permission.").

This issue underscores the central fallacy with Harris County's argument. In accordance with section 37.003, Knapp sought a determination of the proper allocation of third party settlement proceeds under Chapter 417 of the Texas Workers' Compensation Act ("TWCA"), Tex. Labor Code §401.001 et seq., and a declaration of the parties' rights under that statute. Id. at §37.003. Nevertheless, Harris County has attempted to misconstrue Knapp's declaratory judgment action as nothing more than "a suit for money damages," thus potentially subject to sovereign immunity. In this regard, Harris County primarily relies upon two cases: City of Dallas v. Jill Herz, P.C., 363 S.W.3d 896 (Tex. App.-Dallas 2012, no pet.), and Russell v. Metropolitan Transit Authority, 343 S.W.3d 825 (Tex. App.—Houston [14th Dist.] 2011, no pet.). In Herz, an injured worker for the City of Dallas and his law firm sought an award of attorney's fees and expenses on the city's subrogation interest under section 417.003 of the TWCA. Herz, 363 S.W.3d at 898. Similarly, Russell involved a claim asserted by injured worker seeking the recovery of attorney's fees on her governmental employer's subrogation interest, which had already

been settled prior to the filing of her own lawsuit against the third party tortfeasor. Russell, 343 S.W.3d at 828-29. In both Herz and Russell, the courts held that the claims for attorneys' fees under section 417.003 constituted claims for money damages, and were barred by sovereign immunity. Herz, 363 S.W.3d at 900-01; Russell, 343 S.W.3d at 832-33.

However, neither Herz nor Russell support Harris County's assertion of sovereign immunity in this instance. First, Herz did not offer any analysis of sovereign immunity in the context of declaratory judgment actions; in fact, the opinion in Herz suggests that the plaintiff simply filed suit against the city under section 417.003, as opposed to seeking declaratory relief under the UDJA. In any event, Herz hardly stands for the proposition that sovereign immunity bars Knapp's declaratory judgment action, since the opinion in Herz does not even mention the UDJA. Second, while the court in Russell does address the UDJA in its analysis, the claims asserted by the plaintiff in that case clearly constituted "a suit for money damages," since she was attempting to recover monies already received by her governmental employer. While the court in Russell acknowledged the existence of "several cases in which declaratory judgment actions related to determining parties' rights under a statute or ordinance were held not to implicate governmental immunity," it nevertheless distinguished those cases on the basis that "each controversy represented an

ongoing dispute rather than a single, past injury that could be remedied only by an award of money damages." See Russell, 343 S.W.3d at 836, fn. 3.

The distinction set forth in Russell is particularly relevant in this case. Unlike the plaintiff in Russell who was attempting to recover money already in the possession of her employer, Knapp's action seeks an apportionment of settlement funds being paid by a third party, i.e., "an ongoing dispute rather than a single, past injury that could be remedied only by an award of money damages." The final judgment does not require Harris County to pay one penny; rather, the judgment merely recites the allocation of settlement funds to be paid by a third party. This same distinction was drawn by the Texas Supreme Court in Reata Constr. Corp. v. City of Dallas, 197 S.W.3d 371 (Tex. 2006). In Reata Constr., a property owner sued a contractor and subcontractor that had drilled into a public water line. In turn, the subcontractor filed a third party action against the City of Dallas, claiming that the city had incorrectly identified the water line prior to the commencement of the project. Id. at 373. The City of Dallas intervened into the lawsuit and asserted its own claim against the contractor, but then alleged that the subcontractor's third party action was barred by sovereign immunity. Id. The Texas Supreme Court disagreed, noting that the third party claim was not an action seeking monetary relief against the city, and not subject to sovereign immunity:

21

*A lack of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes. . . . However, if the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs. **If the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted.** Therefore, a determination that a governmental entity's immunity from suit does not extend to a situation where the entity has filed suit is consistent with the policy issues involved with immunity. In this situation, we believe it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it.*

Reata Constr., 197 S.W.3d at 375-76 [emphasis added].

The Texas Supreme Court in Reata Constr. could not have framed the issues in this case any clearer. Knapp merely sought a determination under the UDJA as to the division of settlement funds between himself and Harris

22

County. Because his declaratory judgment action operated "only as an offset to reduce the government's recovery," as opposed to having a monetary judgment rendered against Harris County, sovereign immunity was never implicated in this case. By nevertheless attempting to mischaracterize this case as being "a suit for money damages," Harris County is merely attempting to use sovereign immunity as a sword, in order to claim a portion of the settlement proceeds for which the county has no legal right of recovery. For these reasons, the trial court correctly overruled Harris County's Plea to the Jurisdiction in this case.

## B.   Even if sovereign immunity applied, Harris County waived any such immunity:

Sovereign immunity is a common-law doctrine that initially developed without any legislative or constitutional enactment. Reata Const., 197 S.W.3d at 374 (citing Cohens v. Virginia, 6 Wheat. 264, 19 U.S. 264, 293, 5 L.Ed. 257 (1821)). Because sovereign immunity is a common-law doctrine, the judiciary may modify or abrogate such immunity by modifying the common law. Id (citing Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n. 3 (Tex. 2003)). While courts typically defer to the Legislature to waive such immunity, a governmental entity may waive its immunity under common law by certain

23

actions, even absent a legislative waiver of immunity. Reata Const., 197 S.W.3d at 375 (citing Catalina Dev., Inc. v. County of El Paso, 121 S.W.3d 704, 705-06 (Tex.2003)). One such method of waiver occurs when a governmental entity interjects itself into, or chooses to engage in, litigation to assert affirmative claims for monetary damages. Id. While a lack of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits and/or paying judgments, a governmental entity will presumably have made a decision to expend such resources when it engages in litigation to assert affirmative claims. Id. Furthermore, "it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it." Reata Const., 197 S.W.3d at 375-76 (citing Guar. Trust Co. v. United States, 304 U.S. 126, 134-35, 58 S.Ct. 785, 82 L.Ed. 1224 (1938)).

Harris County's brief wholly fails to address this second, independent basis supporting the trial court's denial of its Plea to the Jurisdiction. In contrast to the scenario in Herz, Harris County not only asserted its own claim for affirmative relief under the UDJA, but moreover sued Plaintiff for the recovery of money damages consisting of attorneys' fees and expenses:

> [HARRIS COUNTY, TEXAS] asks that this Court grant its Declaratory
> Judgment Act relief including attorney fees and costs of court. [HARRIS

24

*COUNTY] asks that the court enter a judgment against the Plaintiff herein for full recovery of the worker compensation lien in toto and for prejudgment interest and postjudgment interest and all other relief to which County show itself entitled. And for all other relief under law and equity in this case.*

CR 41; see also Herz, 363 S.W.3d at 900-01 (distinguishing Reata Const. since the governmental entity "joined into the litigation process by asserting its own affirmative claims for monetary relief"). Harris County later withdrew this claim for affirmative relief, after Knapp raised the issue of waiver in response to the county's sovereign immunity defense. CR 171-79. However, once jurisdiction was lawfully and properly acquired, no subsequent fact or event in the case could serve to defeat jurisdiction. See Continental Coffee Products Co. v. Cazarez, 937 S.W.2d 444, 449 (Tex. 1997); Dallas Ind. Sch. Dist. v. Porter, 709 S.W.2d 642, 643 (Tex. 1986) (per curiam); Flynt v. Garcia, 587 S.W.2d 109, 109-10 (Tex. 1979).

As demonstrated at length above, sovereign immunity has no application to Knapp's declaratory judgment action seeking an allocation of the third party settlement proceeds. Nevertheless, even if sovereign immunity did apply, Harris County waived any such immunity by seeking its own claim for affirmative relief under the UDJA, and also suing Plaintiff for monetary

25

damages. <u>Reata Const.</u>, 197 S.W.3d at 375. Defendant HARRIS COUNTY's decision to thereafter amend its pleadings did nothing to divest this Court of jurisdiction, which existed even prior to HARRIS COUNTY's decision to assert its own claim for affirmative relief. While Harris County now offers an exhaustive list of cases addressing sovereign immunity in the context of various statutory claims, none of these cases lend support to Harris County regarding its waiver of immunity in this instance. For this reason alone, the trial court correctly denied Harris County's jurisdictional challenge in this case.

## C.   The TWCA waives sovereign immunity for apportionment of third party settlement proceeds.

As a third basis for the trial court's denial of the Plea to the Jurisdiction, sovereign immunity has been waived for apportionment issues under section 417.003 of the TWCA:

> *Section 417.003(a) provides, in pertinent part, that "an insurance carrier whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant." Tex. Lab. Code Ann. § 417.003(a) (Vernon 1996) (emphasis ours). "Insurance carrier" is defined to include "a governmental entity that self-insures, either individually or collectively." Tex. Lab. Code Ann. §*

*401.011(27)(C) (Vernon 1996); see also Tex. Lab. Code Ann. §*
*503.002(a)(1) (including chapter 401 in workers' compensation*
*coverage provided to University of Texas employees). Including self-*
*insuring governmental entities within the class subject to such actions is*
*not without meaning. See Cameron v. Terrell & Garrett, Inc., 618 S.W.2d*
*535, 540 (Tex.1981) (rule of statutory construction that every word of*
*statute must be presumed to have been used for purpose). We hold that*
*the relevant statutes clearly and unambiguously evidence the*
*Legislature's intent to waive immunity for apportionment actions. See*
*also Texas Dep ' t of Transp. v. Wilson, 980 S.W.2d 939, 942 (Tex.*
*App.--Fort Worth 1998, pet. filed) (concluding that State not immune*
*from apportionment actions).*

Univ. of Texas Health Science Center v. Mata & Bordini, Inc., 2 S.W.3d 312,
317 (Tex. App. —San Antonio 1999, pet. denied); see also Texas Dept. of
Transp. v. Wilson, 980 S.W.2d 939, 942 (Tex. App.—Fort Worth 1998, pet.
denied) (sovereign immunity does not permit state agency to avoid
apportionment of third party settlement proceeds under section 417.003, since
the legislature defined "insurance carrier" under TWCA as to include state
agencies); Univ. of Texas v Bishop, 997 S.W.2d 350, 354 (Tex. App.—Fort
Worth 1999, pet. denied) (Texas Labor Code's express definition of "insurance

27

carrier" as a self-insured governmental entity, and the use of that term throughout the code provisions relating to the apportionment of fees and expenses, demonstrates that the legislature clearly and unambiguously intended self-insured governmental entities to pay attorney's fees and expenses out of the entity's subrogation interest).

Harris County attempts to distinguish the foregoing authorities by relying upon the Texas Supreme Court's analysis of sovereign immunity in the context of "anti-retaliation" claims under section 451 of the TWCA. In City of LaPorte v. Barfield, 898 S.W.2d 288 (Tex. 1995), the Texas Supreme Court held that sovereign immunity did not exist for such "anti-retaliation" claims asserted against governmental entities. Barfield, 898 S.W.2d at 296-97. The Court noted that governmental entities were initially required in 1973 to provide workers' compensation benefits under the Political Subdivisions Law ("PSL"), Tex. Labor Code §504.001 et seq. Id. at 294. While the PSL adopted several provisions of the TWCA, the anti-retaliation provisions of the TWCA were not incorporated into the PSL at that time. Id. at 294-95. The anti-retaliation provisions were later adopted by the PSL, and in 1993, the PSL was amended to include a provision under section 504.003 requiring an election of remedies between claims asserted under the Texas Whistleblowers Act and the anti-retaliation provisions under the TWCA. Id at 295-97. These provisions under

28

the PSL permitted the court in Barfield to conclude that the legislature had intended to waive immunity for governmental entities for the anti-retaliation statute under the TWCA. Id at 296-97.

In 1995, the Texas Supreme Court re-visited the issues presented in Barfield in Travis Cent. Appraisal Dist. v. Norman, 342 S.W.3d 54 (Tex. 2011). At that point, the Court noted that the "clear and unambiguous waiver of immunity" for anti-retaliation claims previously found under section 504.003 of the PSL was no longer clear, in light of a 2005 amendment to chapter 504 stating that "[n]othing in this chapter waives sovereign immunity or creates a new cause of action." Id. (quoting Tex. Lab. Code § 504.053(e)). Since this provision now applied to section 504.003, the Court determined that its basis in Barfield for finding of a waiver of sovereign immunity under the PSL in anti-retaliation cases no longer existed. Id. However, in finding a waiver of immunity for apportionment actions under section 417.003, the courts in Mata, Wilson, and Bishop relied upon the TWCA, and not the PSL, in finding such a waiver. Furthermore, under section 417.001, the carrier (defined under section 401.011(27) of the TWCA as including governmental entities) is entitled to "enforce the liability of the third party in the name of the injured employee or the legal beneficiary." Unlike the provisions relating to anti-retaliation claims, the provisions relating to third party recoveries specifically

permits carriers, including governmental entities, with the right to sue a third party for the recovery of funds for which the apportionment procedures under 417.003 would apply. Tex. Labor Code §417.001. It defies logic and reason that the Texas Legislature would specifically confer a right for governmental entities to sue under chapter 417 of the TWCA, but yet not permit the entities to be sued under the same chapter when they fail to comply with the appointment procedures set forth in section 417.003. See Union Carbide Corp. v. Synatzske, 438 S.W.3d 39, 52 (Tex. 2014) (statutes are construed in a manner to prevent an absurd result).

While Harris County devotes a significant portion of its brief in analyzing sovereign immunity in other statutes and contexts, the simple fact remains that Knapp's action under the UDJA did not constitute a "suit for money damages" that could otherwise give rise to immunity issues. Moreover, in contrast to Herz, Russell, and all of the other cases relied upon in its brief, Harris County unequivocally waived any alleged immunity defense by asserting its own claim for affirmative relief, and suing its own employee for monetary damages. Reata Const., 197 S.W.3d at 375. Harris County thus cannot legitimately claim to be protected by sovereign immunity, when the final judgment merely reduced its recovery of funds to be received from a third party, and would not require tax resources to pay the judgment. Id. at S.W.3d at 375-6. For these

30

reasons, the trial court correctly denied Harris County's Plea to the Jurisdiction in this case.

**REPLY POINT NO. 2:**  **The trial court did not abuse its discretion in allocating the third party settlement funds in accordance with Chapter 417 of the Texas Labor Code.**

A trial court's allocation of attorney's fees from a third party settlement under Chapter 417 of the TWCA is reviewed for an abuse of discretion. Erivas v. State Farm Mut. Auto Ins. Co., 141 S.W.3d 671, 676 (Tex. App.-El Paso 2004, no pet.). When a trial court awards attorney's fees under section 417.003, and no findings of fact or conclusions of law are filed or requested, all necessary findings are implied to support the trial court's judgment. Hartford Accident & Indem. Co. v. Buckland, 882 S.W.2d 440, 446 (Tex. App.-Dallas 1994, writ denied). In this instance, no findings of fact or conclusions of law were ever filed or requested, and thus it is assumed that the trial court made all necessary findings in allocating the settlement proceeds from Knapp's third party recovery.

Nevertheless, Harris County claims that the trial court "disregarded years of Texas precedent" in determining its allocation of the third party settlement proceeds recovered by Knapp in his personal injury claim. Ironically, it was Harris County, and not the trial court, that disregarded years of Texas

31

precedent in trying to seize a portion of Knapp's third party recovery for which the county had no legal right of recovery. Fortunately, the trial court followed the Texas precedent, including cases decided by this very court, and rendered a judgment that correctly allocated the third party settlement proceeds in accordance with Chapter 417 of the TWCA. For these reasons, Knapp respectfully requests this honorable Court to affirm the judgment of the trial court below.

**A. The trial court correctly determined the "net amount recovered" for the purposes of calculating Harris County's interest.**

Both before and after the filing of this action, Harris County has refused to acknowledge the statutory procedures for calculating the amount of its subrogation interest under the TWCA. Under section 417.001 of the TWCA, an employee is entitled to seek damages from a third party for an injury that is also compensable as a worker's compensation claim. See Tex. Labor Code §417.001(a). In such a scenario, the worker's compensation carrier is subrogated to the rights of its injured employee, and its subrogation interest is limited to the amount of total benefits paid or assumed by the carrier to the employee or the legal beneficiary, less any percentage of responsibility attributed to the employer. See Tex. Labor Code §417.001(b). However, the

32

carrier's subrogation interest is not paid from the *gross amount* of the third party recovery, but is instead satisfied only from the "*net amount*" of the recovery:

> *Section 417.002: RECOVERY IN THIRD PARTY ACTION*
>
> *(a) The net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.*

See Tex. Labor Code §417.002(a) (emphasis added). In this context, the "net amount" has been interpreted to exclude the attorneys' fees and litigation expenses incurred by the claimant's counsel in pursuing the third party litigation. Bridges v. Texas A&M Univ. System, 790 S.W.2d 831, 833 (Tex. App.—Houston [14th Dist.] 1990, no writ); see also Tex. Workers' Comp. Ins. Fund v. Alcorta, 989 S.W.2d 849, 852 (Tex. App.-San Antonio 1999, no pet.); Lumbermens Mutual Casualty Co. v. Parrent, No. 05-96-01144-CV (Tex. App.—Dallas, April 20, 1998, no pet.)(Lexis 2291); Insurance Co. of N. Am. v. Wright, 886 S.W.2d 337, 344 (Tex. App.—Houston [1st Dist.], 1994, writ denied); Texas Dept. of Transp. v. Anderson, No. 2-98-383-CV (Tex. App.--Fort Worth, June 22, 2000, no pet.); Houston Gen. Ins. Co. v. Campbell, 964 S.W.2d 691 (Tex. App.--Corpus Christi 1998, no pet.). The amount available to satisfy the workers' compensation lien is based upon the "net amount" of the

33

total settlement, even when the insurance carrier's interest exceeds the net amount, and the carrier's interest is represented by its own attorney. Lumbermens, slip op. at 1. The provisions of section 417.002 are separate and independent from the allocation of attorneys' fees as to the carrier's subrogation interest, as mandated by section 417.003.

No genuine issue of material fact existed as to the net amount available to satisfy Harris County's subrogation interest in this case. Based upon the amount of the third party settlement and the attorney-fee contract executed by Plaintiff, the trial court rendered partial summary judgment establishing the "net amount" of the third party recovery available to satisfy Harris County's interest under section 417.002 as follows:

| | |
|---|---|
| Total Recovery: | $ 23,250.00 |
| Less: Attorneys' Fees (36%) | $ 8,370.00 |
| Less: Case Expenses | $ 453.00 |
| Net Amount of Recovery | $ 14,427.00 |

See CR 222-23. Harris County nevertheless insisted upon being "given first money," and argues that its subrogation interest should have been paid from the gross settlement funds, as opposed to the "net recovery" as clearly required by section 417.002. Such an argument, however, violates the fundamental principle of statutory construction requiring courts to give effect to

34

all words of a statute, and not treating any words as meaningless. See Chevron Corp. v. Redmon, 745 S.W.2d 314, 316 (Tex.1987). Had the Texas Legislature intended for a carrier's subrogation interest to be initially deducted from the gross amount of a settlement or recovery, then the phrase "net amount" as used in section 417.002 would be meaningless. See Tex. Workers' Comp. Ins. Fund v. Alcorta, 989 S.W.2d 849, 852 (Tex. App.-San Antonio 1999, no pet.) ("That is, by statutory design, the 'first money' owed to the carrier--the net amount recovered under section 417.002(a)--is a sum which has been reduced by allowable attorney's fees under section 417.003"); see also Erivas, 141 S.W.3d at 676, 678 (adopting the reasoning of Alcorta); Ins. Co. of N. Am. v. Wright, 886 S.W.2d 337, 344 (Tex. App.-Houston [1st Dist.] 1994, writ denied) ("We find that the 'net amount' subject to subrogation is the amount received by the claimant after appropriate deductions for attorney's fees and court costs have been taken."); Resolution Oversight Corp. v. Garza, No. 03-08-00481-CV, 2009 Tex. App. LEXIS 5324, at 22-24 (Tex. App.--Austin July 10, 2009, no pet.) (same).

Furthermore, using the "net amount," as opposed to the gross amount, for the purposes of calculating the carrier's interest meets the goals of the "(1) compensating claimants whose attorneys perform work for the benefit of a subrogated insurance carrier and (2) prohibiting the insurance carrier from

35

obtaining a "free ride" from the efforts of the claimant's attorney are furthered."

Delgado v. Texas Municipal League Intergovernmental Risk Pool, 13-09-00126-CV (Tex. App.—Corpus Christi, Aug. 31, 2009, no pet.) (citing Caesar v. Bohacek, 176 S.W.3d 282, 285 (Tex. App.-Houston [1st Dist.] 2004, no pet.)); Prewitt & Sampson v. City of Dallas, 713 S.W.2d 720, 723 (Tex. App.-Dallas 1986, writ ref'd n.r.e.). Nevertheless, Harris County relies upon Tex. Mut. Ins. Co. v. Ledbetter, 251 S.W.3d 31 (Tex. 2008), to suggest that its subrogation interest should be calculated "in full" from the first monies recovered, as opposed to being based upon the "net recovery" under section 417.002. However, even in Ledbetter, the court noted that the "first money" doctrine does not preclude the right for the claimant to recover attorneys' fees and expenses from the settlement proceeds. Ledbetter, 251 S.W.3d at 33-36; see also Allison v. Service Lloyds Ins. Co., 437 S.W.3d 589, 595 (Tex. App.-Houston [14th Dist.] 2014, pet. denied).

Harris County nevertheless claims that the Plaintiff and his counsel obtained a "double recovery" and unconscionable fee by first applying the contingency fee agreement of 36% to the gross settlement amount under section 417.002, and then recovering attorneys' fees up to one-third on Harris County's subrogation interest under 417.003. Harris County fails to note, however, that this identical method of calculation of the attorneys' fees was

36

approved in both <u>Lumberman</u> and <u>Anderson</u>, with the latter case involving the subrogation claim asserted by another governmental entity, the Texas Department of Transportation. While Harris County has attempted to disparage both the Plaintiff and his counsel for relying upon the provisions of section 417.002, those statutory provisions were intended to protect against the very type of overreaching practices embraced by Harris County in this case:

> *Appellee cites <u>Prewitt</u> and <u>Sampson v. City of Dallas</u>, 713 S.W.2d 723 (Tex. App.--Dallas 1986, writ ref'd n.r.e.), to note that the intent of the legislature in enacting article 8307, section 6a, was to compensate attorneys for work they performed and "to prohibit the carrier from obtaining a 'free ride' from the efforts of the claimant's attorney." We agree with this sound reasoning.... In demanding reimbursement for the gross amount of the settlement, we find that appellee is seeking not only a "free ride," but is also demanding complete title to the "vehicle" which generated the settlement in the first place.*

<u>Bridges</u>, 790 S.W.2d at 833.

By ignoring the unambiguous provisions of 417.002 and demanding the full, undivided recovery of its interest from the gross amount of the third party recovery, Harris County not only attempted to take the proverbial "free ride,"

37

but moreover tried to recover the vast majority of its injured employee's settlement funds without any legal justification. While Harris County accuses Knapp's counsel as engaging in unethical conduct, Harris County has offered no analysis as to why the method of fee calculation affirmed by the numerous Texas courts allegedly violates the Texas disciplinary rules. If anything, Harris County has engaged in unethical conduct by actively delaying the disbursement of Knapp's third party settlement funds, and by asserting groundless defenses in its attempt to avoid the mandatory allocation of attorneys' fees and expenses required by sections 417.002 and 417.003 of the TWCA. Moreover, Harris County's baseless attack on Knapp and his counsel ignores the unfortunate reality of this case: that the lawyers for Harris County wasted taxpayers' money and expended judicial resources by trying to seize a portion of the settlement proceeds that, by statute and common law, simply does not belong to their client. For these reasons, the trial court's calculation of the "net amount" of proceeds available to satisfy Harris County's lien under section 417.002 did not constitute an abuse of discretion.

## B. The trial court did not abuse its discretion in allocating the fees on Harris County's interest under section 417.003 of the TWCA.

38

After determining the carrier's interest based upon the "net amount" of the third party recovery under section 417.002, section 417.003 of the TWCA sets forth two alternative methods for allocating attorney's fees and expenses on the carrier's interest. The first method under section 417.003(a) applies when the carrier's interest is not being actively represented by an attorney in the third party action. Under such a scenario, the fee allocated to the employee's attorney for representing the carrier's interest is calculated by the terms of any agreement with the carrier; or, in the absence of any such agreement, by the court's determination of a "reasonable fee for recovery of the carrier's interest":

*Sec. 417.003. ATTORNEY'S FEE FOR REPRESENTATION OF INSURANCE CARRIER'S INTEREST*

*(a) An insurance carrier whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant in the amount agreed on between the attorney and the insurance carrier. In the absence of an agreement, the court shall award to the attorney payable out of the insurance carrier's recovery:*

*(1) a reasonable fee for recovery of the insurance carrier's interest that may not exceed one-third of the insurance carrier's recovery; and*

*(2) a proportionate share of expenses.*

See Tex. Labor Code §417.003(a). However, in the event that an attorney is not "actively representing" the carrier's interest, the second method for allocating fees is set forth in section 417.003(c):

*(c) If an attorney actively representing the insurance carrier's interest actively participates in obtaining a recovery, the court shall award and apportion between the claimant's and the insurance carrier's attorneys a fee payable out of the insurance carrier's subrogation recovery. In apportioning the award, the court shall consider the benefit accruing to the insurance carrier as a result of each attorney's service. The total attorney's fees may not exceed one-third of the insurance carrier's recovery.*

See Tex. Labor Code §417.003(c). Thus, the initial question for allocating fees and expenses under section 417.003 is determining whether a separate attorney actively represented the carrier's interest in the third party action.

On appeal, Harris County has not disputed the trial court's method of allocation of fees and expenses under section 417.003, presumably since Harris County's attorney did nothing—much less "actively participate"—in obtaining the recovery from the third party's liability insurance carrier. Based upon the uncontested evidence, Knapp's attorney obtained the affidavits and

40

accompanying medical and billing records from the various custodians of Knapp's health care providers; reviewed and summarized all medical and billing records after their receipt; prepared a settlement demand letter to the third party's liability insurance carrier; prepared and filed the Plaintiff's Original Petition against the third party; prepared written discovery requests to the third party; prepared Knapp's responses and objections to third party's written discovery requests; and engaged in settlement negotiations with the other driver's liability insurance carrier. RR, p. 16-26; CR 232-235. Eventually, Knapp's counsel was able to negotiate a settlement of the third party liability claim for more than double the amount of the liability insurance carrier's initial settlement offer. CR 129, 141.

On the other hand, Harris County admittedly did not participate in the settlement negotiations of the third party liability claim; never attempted to establish the admissibility of Knapp's health care records; never attempted to establish the reasonableness and necessity of Plaintiff's health care expenses by affidavit under Tex. Civ. Prac. & Rem. Code §18.001; and never forwarded a "Stowers" letter to the third party's liability insurance carrier. CR 107-112. Moreover, Harris County offered no evidence at trial demonstrating any active representation of its counsel in procuring the third party recovery. RR 28-31. While Harris County noted that it had previously filed a separate lawsuit

41

against the third party tortfeasor (which the county later dismissed), the mere filing of pleadings does not constitute any evidence of "active representation" of the carrier's interest under section 417.003:

> 'Active representation requires more than filing pleadings asserting the carrier's subrogation interest.' Hodges v. Mack Trucks Inc., 474 F.3d 188, 204 (5th Cir.2006) (citing Hartford Ins. Co. v. Branton & Mendelsohn, Inc., 670 S.W.2d 699, 702 (Tex. App.-San Antonio 1984, no writ)).  A carrier's attorney actively represents its client when the attorney takes steps to participate in pre-trial discovery and actively prepare for trial against the third-party defendant. See Rowan v. Zurich Am. Ins. Co., 499 F.Supp.2d 704, 707 (E.D.Tex.2007); Hartford Ins. Co., 670 S.W.2d at 701-02; cf. Buckland, 882 S.W.2d at 447 ("An attorney 'actively represents' and 'actively participates in obtaining a recovery' when the attorney takes steps, adequate when measured by the difficulty of the case, toward prosecuting the claim [against the third-party defendant]." (quoting Branton, 670 S.W.2d at 702)); City of Austin v. Janowski, 825 S.W.2d 786, 789 (Tex. App.-Austin 1992, no writ). Such steps may include serving discovery requests, preparing and delivering discovery products, deposing witnesses, hiring experts, participating in hearings, preparing the charge, negotiating a settlement,

*and the like. See Buckland, 882 S.W.2d at 447 (noting the carrier "did*

*not generate or send any written discovery or take any depositions" and*

*"did not participate in the hearings" ); Janowski, 825 S.W.2d at 789;*

*Branton, 670 S.W.2d at 702. Intervention alone does not establish*

*active representation as a matter of law. See Janowski, 825 S.W.2d at*

*789-90 (agreeing that the employer was not actively represented even*

*though it filed a petition in intervention and attended a deposition);*

*Branton, 670 S.W.2d at 702 (approving the trial court's determination*

*that the carrier was not actively represented although its attorney had*

*filed an original and two amended petitions in intervention); Univ. of Tex.*

*Sys. v. Melchor, 696 S.W.2d 406, 409 (Tex. App.--Houston [14th Dist.]*

*1985, no writ) ("Under the circumstances of contested liability, the*

*subrogation attorney does not fulfill his duty of actively participating by*

*simply filing the necessary papers for intervention and reviewing*

*pleadings.")."*

Morales v. Michelin N. America, Inc., 351 S.W.3d 120, 123-24 (Tex. App.-San

Antonio 2011, no pet.).

Based upon the foregoing, the trial court correctly applied section

417.003(a) as the method for allocating attorney's fees towards Harris

County's interest. CR 295-96. Since Knapp's attorney performed all of the

legal services towards the recovery of the third party settlement, the trial court did not abuse its discretion in allocating fees to that attorney in the amount of $4,809.00, or one-third of Harris County's interest of $14,427.00 based upon the "net recovery" under section 417.002. CR 295-96. Furthermore, since Harris County's net recovery before allocation of attorney's fees constituted approximately sixty-two percent (62%) of the $23,250.00 settlement amount, the trial court correctly allocated $280.86 as a proportionate share of Knapp's expenses in the amount of $453.00. CR 143-45, 295-296. Because Harris County has failed to establish any abuse of the trial court's discretion in allocating the third party settlement proceeds, Knapp requests this Court to affirm the trial court's allocation of settlement proceeds as reflected in its order dated February 1, 2013 and the final judgment.

**REPLY POINT NO. 3: The trial court did not commit reversible error by denying Harris County's request for a jury.**

Finally, Harris County complains about the trial court's denial of a jury to decide the proper allocation of attorneys' fees and expenses under section 417.003. Ironically, its own attorney stated that "[i]t is going to be necessary to have the Court allocate any attorney fees in this case." CR 137. As demonstrated at length below, the trial court did not commit reversible error by

44

determining the allocation without a jury in accordance with section 417.003; alternatively, even if the trial court erred in this regard, any such error would have merely been harmless in this instance:

## A. Under section 417.003, the trial court was required to determine the allocation of fees and expenses without a jury.

Both sections 417.003(a) and 417.003(c) of the TWCA require the allocation of fees and expenses to be decided by a court, as opposed to a jury:

> Sec. 417.003. ATTORNEY'S FEE FOR REPRESENTATION OF INSURANCE CARRIER'S INTEREST. (a) An insurance carrier whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant in the amount agreed on between the attorney and the insurance carrier. In the absence of an agreement, **the court shall award** to the attorney payable out of the insurance carrier's recovery:
>
> . . . . .
>
> (c) If an attorney actively representing the insurance carrier's interest actively participates in obtaining a recovery, **the court shall award and apportion** between the claimant's and the insurance carrier's attorneys a fee payable out of the insurance carrier's subrogation recovery. **In apportioning the award, the court shall consider** the benefit accruing

> *to the insurance carrier as a result of each attorney's service. The total*
> *attorney's fees may not exceed one-third of the insurance carrier's*
> *recovery.*

See Tex. Labor Code §417.003(a), (c) (emphasis added). In determining the allocation of fees under section 417.003 without a jury, the trial court was not only complying with the unambiguous provisions of the statute, but was also following the approach taken by many other courts addressing this identical issue:

> *"The dictates of section 417.003(c) that the trial court 'shall award and*
> *apportion' attorney's fees 'out of the insurance carrier's subrogation*
> *recovery' are not discretionary. Likewise, the court 'shall consider the*
> *benefit accruing to the insurance carrier as a result of each attorney's*
> *service.' TEX. LAB.CODE ANN. § 417.003(c) (Vernon 1996). **This is a***
> ***fact question for the court's determination.***"

Texas Workers' Compensation Ins. Fund v. Alcorta, 989 S.W.2d 849, 851 (Tex. App. —San Antonio 1999, no pet.) (emphasis added); see also Hartford Acc. & Indem. Co. v. Buckland, 882 S.W.2d 440, 446 (Tex. App.—Dallas 1994, writ denied) (trial court determined the allocation of attorneys' fees under section 417.003 by having the parties submit affidavits, and then allocated the fees in the final judgment; such an allocation "rests in the sound

discretion of the trial court and its judgment will not be reversed without a clear showing that the trial court abused its discretion"); Delgado v. Texas Municipal League Intergovernmental Risk Pool, 13-09-00126-CV (Tex. App.—Corpus Christi, Aug. 31, 2009, no pet.) (trial court determined allocation of fees under section 417.003 by summary judgment, as opposed to trial on merits; allocation of such fees affirmed on appeal under an "abuse of discretion" standard); Erivas v. State Farm Mut. Auto. Ins. Co., 141 S.W.3d 671, 676-78 (Tex. App.—El Paso 2004, no pet.) (trial court's allocation of fees under section 417.003 conducted by post-verdict motions, after a jury trial on the underlying liability claim against the tortfeasor; determination of award based upon an abuse of discretion standard); Morales v. Michelin North America, Inc., 351 S.W.3d 120, 122-24 (Tex. App.-San Antonio 2011, no pet.) (trial court has "mandatory duty" under section 417.003 to award to claimant's attorney both a reasonable attorney's fee and 'a proportionate share of expenses; the allocation of fees and expenses was determined by summary judgment motion, as opposed to a trial on the merits).

By determining the allocation of fees under section 417.003, the trial court not only followed the precedent established by Alcorta, Buckland, Delgado, Erivas, and Morales, but also adhered to the long-standing principle that the amount of attorneys' fees in cases under the TWCA is exclusively for

the determination of the court, as opposed to a jury. See Texas Employers Insurance Association v. Motley, 491 S.W.2d 395, 397 (Tex. 1973) (amount of the attorney's fees to be allowed in compensation cases "is a matter for the trial court to determine without the aid of a jury, and the amount of the recovery is within its discretion"); Texas Emp. Ins. Ass'n v. Hatton, 255 S.W.2d 848, 152 Tex. 199 (Tex. 1953) (amount of attorney's fees to be allowed in workers' compensation cases "is exclusively for the court and not the jury"). Harris County nevertheless attempts to distinguish this case by relying upon Transcontinental Ins. Co. v. Crump, 330 S.W.3d 211 (Tex. 2010), which addressed the "fee-shifting" provisions under a completely different section of the TWCA. In Crump, the Texas Supreme Court analyzed section 408.221(c) of the TWCA, which permits the claimant to recover attorneys' fees directly from the insurance carrier when the claimant prevails on one or more issues in a judicial review initiated by the carrier. Id. at 227.

Harris County fails to note the critical distinction drawn in Crump between the precedent established in Motley and Hatton, and the unique issues posed by section 408.221(c). Specifically, the Court in Crump noted that section 408.221(c), unlike other portions of the Act, provided for "fee shifting" in which the carrier could be directly liable to the claimant for payment of his or her attorneys' fees. Id. The Court proceeded to analyze the

48

provisions of 408.221(c) in the context of other "fee-shifting" statutes, in which a jury would be permitted to determine the amount of fees to be paid by the non-prevailing party. Id. However, the Court did not overrule Motley and Hatton, noting that those cases "could not have contemplated the fee-shifting mechanism presented in [section 408.221] subsection (c)." Id. Notably, while addressing a different provision requiring court approval for the allocation of attorneys' fees from the claimant's recovery, the Court distinguished that provision as not involving a fee-shifting arrangement, since the "insurance carrier can only be said to pay these fees in the technical sense that it drafts a separate check for the attorney's fees, payable directly to the claimant's attorney." Id. at 229 (addressing section 408.221(a) of the TWCA).

In light of the foregoing, Harris County's reliance upon Crump is clearly misplaced. In contrast to section 408.221(c), which permits the recovery of attorney's fees directly from the carrier as a non-prevailing party, section 417.003 of the TWCA merely requires a court to determine the proper allocation of funds being received from a third party. In this regard, section 417.003 is not a traditional fee-shifting statute, and thus the analysis in Crump is not applicable to the present case. Moreover, by merely substituting the phrase "third party," Harris County "can only be said to pay these fees in the technical sense that a [third party] drafts a separate check for the attorney's

49

fees, payable directly to the claimant's attorney." Crump, 330 S.W.3d at 229. Because both the statute and the case law required the trial court's allocation of attorneys' fees and expenses in third party recoveries under the TWCA, the trial court did not err by determining that allocation without a jury.

## B. **Even if the trial court erred in failing to conduct a jury trial, any such error was harmless**:

Finally, a trial court's refusal to grant a jury trial is harmless error if no material issues of fact existed, and as such, an instructed verdict would have been justified. Halsell v. Dehoyos, 810 S.W.2d 371, 372 (Tex. 1991) (citing Olson v. Texas Commerce Bank, 715 S.W.2d 764, 767 (Tex. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.). As demonstrated by this Court in Olson, a party cannot fail to rebut a prima facie case at trial, and thereafter complain about the trial court's denial of a trial by jury on appeal:

> In the instant case, the appellants rested without presenting any evidence in their own defense. We conclude that, under the circumstances, the trial court would have been required to render a directed verdict in favor of TCB at the close of the evidence even if a jury trial had been in progress, because TCB presented a prima facie case based on the guaranty agreement, and the appellants failed to rebut it. Therefore, even if it had been error for the trial judge to deny appellants

50

*a jury trial, it was harmless error.*

Olson, 715 S.W.2d at 767-68).

This Court's holding in Olson is equally applicable in this case. At trial, Harris County presented no evidence whatsoever to rebut the testimony from Knapp's counsel regarding the proper allocation of attorneys' fees and expenses. RR, p. 26-31. Because Knapp established a prima facie case for the allocation of fees under section 417.003, Harris County's failure to offer any evidence to the contrary would have justified an instructed verdict on this sole issue presented at trial. Harris County cannot complain about the absence of a jury to decided disputed issues of fact, when the county wholly failed to offer any evidence to dispute those very fact issues at the time of trial. For these reasons, Harris County has failed to establish that the trial court's refusal of a jury trial in this case constituted reversible error.

## PRAYER FOR RELIEF

Based upon the foregoing, Appellee GERALD KNAPP respectfully requests this Court to affirm the judgment of the trial court; to deny Appellant's points of error on appeal, and to grant such other and further relief, both general and special, legal and equitable, to which Appellee may be entitled.

51

Respectfully submitted,

/s/ *Scott C. Lannie*

---

BY: SCOTT C. LANNIE
LAW OFFICES OF SCOTT C. LANNIE, P.C.
4000 Garth, Ste. 150
Baytown, Texas 77521
Telephone (281) 303-9200
Facsimile (281) 303-8280
T.B.N. 11937350
E-mail: sclannie@aol.com
Attorney for Appellee
GERALD KNAPP

## CERTIFICATE OF COMPLIANCE

1.  This brief/response/reply/motion complies with the type-volume limitation of TEX. R. APP. P. 9.4(e)(i)(2)(B) because:

    __X__ this brief/response/reply/motion contains 11,057 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(e)(i)(1), or

    _____ this brief/response/reply/motion was not computer-generated, and includes _____ pages, less than or equal to the 50-page limit imposed by TEX. R. APP. P. 9.4(e)(i)(2)(B).

2.  This brief/response/reply/motion complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because:

    __x__ this brief/response/reply/motion has been prepared on a computer using Mircrosoft Word 2010, using a 14-point font throughout the brief except for footnotes, which are in a 12-point font, and using a conventional typeface, Arial; or

    _____ this brief/response/reply/motion has been prepared in a monospaced typeface using a typewriter, in a font no smaller than 10-characters-per-inch.

/S/ *Scott C. Lannie*

_____
SCOTT C. LANNIE
Attorney for Appellee
GERALD KNAPP

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of October 2015, a true and correct copy of this brief has been served upon the following parties via certified mail, return receipt requested, and the original was promptly filed with the Court:

Mr. James A. Cersonsky
Fanaff & Baldwin
11200 Richmond, Suite 250
Houston, Texas 77082

Mr. Vince Ryan
Mr. Michael R. Hull
Harris County Attorney's Office
1019 Congress, 15th Floor
Houston, Texas 77002

/s/ *Scott C. Lannie*

_____
SCOTT C. LANNIE
Attorney for Appellee GERALD KNAPP